IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLD STONE CREAMERY, INC.,<br>9311 E. Via De Ventura<br>Scottsdale, Arizona 85258;<br><br>    Plaintiff,<br><br>  v.<br><br>PIN KNOX, INC. and JASON PINNOCK<br>1621 Murdoch Road<br>Philadelphia, Pennsylvania 19150<br><br>    and<br><br>JACK PINNOCK<br>336 Claremont Avenue<br>Mt. Vernon, New York 10552,<br><br>    Defendants. | Civil Action No. _____ |

## VERIFIED COMPLAINT

Dated: July 31, 2008

**DUANE MORRIS LLP**

J. Manly Parks
Atty. I.D. No. 74647
Sean S. Zabaneh
Atty. I.D. No. 201085
30 South 17th Street
Philadelphia, PA 19102
215.979.1000 (phone)
215.979.1020 (facsimile)
JMParks@duanemorris.com
SSZabaneh@duanemorris.com

*Attorneys for Plaintiff*
*Cold Stone Creamery, Inc.*

Plaintiff, Cold Stone Creamery, Inc. ("Plaintiff" or "Cold Stone"), by its attorneys, Duane Morris LLP, brings the following claims against Defendants, Pin Knox, Inc., Jack Pinnock and Jason Pinnock (collectively "Defendants"), and hereby avers as follows:

## NATURE OF THE ACTION

This is an action for breach of contract based upon Defendants' repeated failures to pay their debts and obligations under agreements governing their ownership of a Cold Stone franchise ice cream store. Plaintiff also brings claims against Defendants for trademark infringement, trade dress infringement and related claims of unfair competition, false designation of origin and dilution arising under the trademark and unfair competition laws of the United States of America, 15 U.S.C. §1051 *et seq.* (also referred to as the "Lanham Act") and applicable common law on the grounds that Defendants have continued to use Cold Stone's trademarks and trade dress following the termination of Defendants' Cold Stone franchise rights.

## THE PARTIES

1. Plaintiff, Cold Stone Creamery, Inc., is an Arizona corporation with its principal place of business at 9311 E. Via De Ventura, Scottsdale, Arizona 85258.

2. Upon information and belief, Defendant, Pin Knox, Inc. ("Pin Knox"), is a Pennsylvania corporation with its principal place of business at 1621 Murdoch Road, Philadelphia, Pennsylvania 19150.

3. Upon information and belief, Defendant, Jack Pinnock, is a citizen and resident of the State of New York.

4. Upon information and belief, Defendant, Jason Pinnock, is a citizen and resident of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338 in that Plaintiff states a claim under the Lanham Act.

6. Supplemental jurisdiction over Plaintiff's state law claims is conferred by 28 U.S.C. §§ 1367(a) and 1338(b).

7. Alternatively, this Court has jurisdiction over Plaintiff's claims under state law pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants because they are residents and citizens of Pennsylvania, they conduct business in Pennsylvania and/or the events giving rise to these claims occurred in Pennsylvania.

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

### *The Cold Stone Creamery Franchise System*

10. The Cold Stone Creamery franchise system offers unique ice cream products to customers nationwide utilizing a signature process for preparing custom ice cream creations on a frozen granite stone.

11. Cold Stone and its franchisees currently operate approximately 1,425 stores in the United States, and hundreds of stores outside the United States.

12. Cold Stone is the owner and licensor of all the trademarks, trade names, service marks, logos, product identifiers, selections and/or designations that are used in connection with

the operation of Cold Stone franchise stores throughout the United States, including several throughout the Commonwealth of Pennsylvania and several within the Eastern District of Pennsylvania, and including, without limitation, all federal registrations and applications for registration for the same. Cold Stone is also the owner and licensor of all common law rights associated with the same.

13. The Cold Stone trademarks are utilized in interstate commerce.

14. Cold Stone owns the federal trademark registrations and all goodwill symbolized by and associated therewith for the mark COLD STONE CREAMERY®, including United States Trademark Registration Nos. 1968506, 2542783, 2779566, 2779567, 2779564, 2779565, 2779569, 2779568, 2779570, 3103205 and 3161605. Cold Stone also owns numerous federal trademark registrations associated with trademarks used in connection with the operation of Cold Stone franchise stores, including, without limitation, the trademarks for certain goods and services identified in the attached Exhibit 1.

15. The Cold Stone trademarks have been widely advertised and promoted by Cold Stone over the years and at great expense to Cold Stone. Consumers have come to associate the Cold Stone trademarks with Cold Stone.

16. Cold Stone is also the owner of the trade dress used in connection with Cold Stone franchise stores, including, without limitation: the total appearance, atmosphere and image of the stores; the ice cream, frozen yogurt, cakes, pies, smoothies, shakes, specialty beverages, soft drinks and other frozen desert products and related products and packaging; all related features such as size, texture, shape, color or color combinations, and graphics of Cold Stone restaurants and the ice cream, frozen yogurt, cakes, pies, smoothies, shakes, specialty beverages, soft drinks and other frozen desert products and related products and packaging; all advertising

and marketing techniques used to promote Cold Stone stores, including all signage, menu boards, product and ice cream displays; all product configurations such as the appearance of the ice cream and ice cream additives and/or "mix-ins," the cone configurations, the "Ice-Cream Pull;" all product packaging including any containers, buckets or other packages for containing ice cream; and any color schemes and designs utilized in connection with the Cold Stone franchise stores' interior walls, counters, table tops, chairs and floors.

17. The Cold Stone trade dress consists of arbitrary embellishments primarily adopted for the purpose of identification and individuality.

18. The Cold Stone trade dress is nonfunctional.

19. The Cold Stone trade dress is utilized in interstate commerce.

20. As a result of the extensive sales, advertising and promotion of the products identified by the Cold Stone trademarks and trade dress, the public has come to know and recognize the Cold Stone trademarks and trade dress, and to associate them exclusively with the products and services offered by Cold Stone and its franchisees. The Cold Stone trademarks and trade dress are among the best and most widely known trademarks and trade dress in the United States today, and are assets of inestimable value to Cold Stone, representing and embodying Cold Stone's goodwill and favorable reputation.

### *The Franchise Agreement and the Sublease Agreement*

21. Defendant, Pin Knox, entered into a franchise agreement with Cold Stone, dated February 14, 2005, (the "Franchise Agreement") whereby Defendants were granted the right to open and operate Cold Stone store #1837, located at 3001 Cheltenham Avenue, Suite 3020, Wyncote, Pennsylvania 19095 (the "Franchise"). The Franchise Agreement is attached hereto as Exhibit 2.

22.     Defendant, Pin Knox, also entered into a sublease agreement with Cold Stone (the "Sublease Agreement") for the premises where the Franchise is located in Wyncote, Pennsylvania.

23.     Defendant, Pin Knox, is owned by Defendants, Jason Pinnock and Jack Pinnock, who are both personal guarantors to the Franchise Agreement. As personal guarantors, Defendants unconditionally agreed to pay Cold Stone on demand any and all obligations and liabilities of the Franchise in connection with or arising out of the Franchise Agreement or any other agreement with Cold Stone, including the Sublease Agreement.

24.     Under § 9 of the Franchise Agreement, Defendants promised, among other things, to pay certain royalties, advertising fees and other fees to Cold Stone.

25.     Under § 3 of the Sublease Agreement, Defendants promised, among other things, to pay monthly rent by certain applicable due dates.

26.     Under § 7(p) of the Franchise Agreement, Defendants agreed to "pay when due all debts and obligations incurred by Franchisee in connection with the conduct of the Franchised Business."

27.     Under § 16.1(c) of the Sublease Agreement, Defendants agreed that "an 'Event of Default' shall occur if at any time during the Term, Sublesee defaults in any obligation under the Franchise Agreement or any other agreement between Sublessor [ ] and Sublessee [ ] and the same is not cured within ten (10) days after written notice thereof."

### *Defendants' Defaults Under the Franchise Agreement and the Sublease Agreement*

28.     Defendants have repeatedly failed to pay their debts and obligations under the Franchise Agreement and the Sublease Agreement.

5

29. In particular, Defendants have failed and continue to fail to pay substantial sums of rent as required by the Sublease Agreement.

30. Defendants have also failed and continue to fail to pay required advertising fees, royalties and other fees to Cold Stone as required under the Franchise Agreement.

31. Defendants' failure to pay their debts and obligations constitute defaults under the Franchise Agreement and the Sublease Agreement.

32. Specifically, Defendants defaulted under §§ 7 and 9 of the Franchise Agreement whereby Defendants agreed to pay all debts and obligations when due and under § 3 of the Sublease Agreement that required the payment of monthly rent when due.

33. Defendants further defaulted under § 16.1(c) of the Sublease Agreement, which created an event of default under the Sublease Agreement in the event of a default under the Franchise Agreement.

### *The Franchise Termination and Defendants' Ongoing Intentional Infringement of Cold Stone's Trademarks and Trade Dress*

34. Under § 16(a) of the Franchise Agreement, Defendants agreed that their failure to pay monies owed to Cold Stone that has not been cured within 30 days after notice of the failure provides Cold Stone with "good cause" to terminate the Franchise Agreement.

35. Under § 16(e) of the Franchise Agreement, Defendants agreed that any breach or default of any obligation under the Sublease Agreement not cured within the applicable cure period would also provide Cold Stone with "good cause" to terminate the Franchise Agreement.

36. As a result of Defendants' repeated failures to pay their debts and obligations under the Franchise Agreement and the Sublease Agreement, on October 11, 2007, Cold Stone sent Defendants a Notice to Cure that identified the specific defaults at issue and provided

6

Defendants with the appropriate opportunity to cure provided under both agreements (the "Notice to Cure").

37. Defendants failed to cure their defaults within the appropriate cure periods.

38. Defendants have continued to default under the Franchise Agreement and the Sublease Agreement following the expiration of the cure periods and Defendants continue to owe Cold Stone substantial outstanding rent, royalties, advertising fees and other fees.

39. On April 23, 2008, Cold Stone sent Defendants a Notice of Termination that terminated the Franchise Agreement and the Sublease Agreement on the same grounds of failure to pay debts and obligations that were set forth in the Notice to Cure (the "Notice of Termination").

40. Under § 17 of the Franchise Agreement, Defendants agreed to comply with certain post-termination obligations, including, among other things, that they would cease using the trademarks, trade dress, copyrights, innovations, proprietary information and other intellectual property owned by Cold Stone upon a termination of the Franchise Agreement for any reason.

41. To date, Defendants have failed to comply with their post-termination obligations, and continue to knowingly and intentionally use Cold Stone's trademarks, trade dress and other intellectual property described above in commerce and outside the scope of the Franchise Agreement.

## COUNT I
## BREACH OF CONTRACT—FRANCHISE AGREEMENT

**(Against All Defendants)**

42. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 41 by reference as if fully set forth herein.

43. Defendants' failures to pay their debts and obligations under the terms of the Franchise Agreement, as set forth above, constitute breaches of the contractual obligations and agreements contained in the Franchise Agreement.

44. Cold Stone's termination of the Franchise Agreement was appropriate in light of Defendants' breaches.

45. Defendants further breached the Franchise Agreement by failing to comply with their post-termination obligations, as set forth above.

46. As a direct and proximate result of Defendants' breaches, Cold Stone has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur damages in an amount that has yet to be determined.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT II
## BREACH OF CONTRACT—SUBLEASE AGREEMENT

### (Against All Defendants)

47. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 46 by reference as if fully set forth herein.

48. Defendants' failures to pay their debts and obligations under the terms of the Sublease Agreement, as set forth above, constitute breaches of the contractual obligations and agreements contained in the Sublease Agreement.

49. As a direct and proximate result of Defendants' breaches, Cold Stone has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur damages in an amount that has yet to be determined.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT III
## FEDERAL TRADEMARK INFRINGEMENT

### (Against All Defendants)

50. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 49 by reference as if fully set forth herein.

51. Following Cold Stone's valid termination of the Franchise Agreement, Defendants have used and continue to use Cold Stone's trademarks in commerce outside the scope of the Franchise Agreement and without the consent or license of Cold Stone.

52. Defendants' unauthorized use of Cold Stone's trademarks is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized or otherwise approved by Cold Stone. Such unauthorized use of Cold Stone's trademarks infringes Cold Stone's exclusive rights in its trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114.

53. Defendants have acted knowingly and with the intent to cause confusion, or to cause mistake, or to deceive.

54. Defendants conduct has directly and proximately caused Cold Stone to suffer irreparable damage and will, unless restrained, continue to cause Cold Stone to suffer damages, all of which cannot be adequately remedied at law.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT IV
## FEDERAL TRADEMARK AND TRADE DRESS DILUTION

### (Against All Defendants)

55. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 54 by reference as if fully set forth herein.

56. By reason of Cold Stone's extensive advertising and use of its trademarks and trade dress, the Cold Stone trademarks and trade dress have become famous and highly distinctive of Cold Stone and are uniquely associated with Cold Stone.

57. Defendants' unauthorized use of Cold Stone's trademarks, as set forth above and which occurred after Cold Stone's trademarks acquired fame, have diluted and will, unless restrained, continue to dilute the distinctive quality of Cold Stone's famous trademarks by destroying the exclusive association between Cold Stone's trademarks and its goods and services, or otherwise lessening the capacity of the trademarks to exclusively identify Cold Stone and its goods.

58. Defendants' aforesaid actions are in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(c), and have already caused Cold Stone irreparable damage and will, unless restrained, continue to cause Cold Stone to suffer damages, all of which cannot be adequately remedied at law.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT V
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

### (Against All Defendants)

59. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 58 by reference as if fully set forth herein.

60. Following Cold Stone's valid termination of the Franchise Agreement, Defendants have used and continue to use Cold Stone's trademarks in commerce outside the scope of the Franchise Agreement and without the consent or license of Cold Stone.

61. Defendants' unauthorized use of Cold Stone's trademarks is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person. Such unauthorized use of Cold Stone's trademarks violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a).

62. Defendants have acted knowingly and with the intent to cause confusion, or to cause mistake, or to deceive.

63. Defendants conduct has directly and proximately caused Cold Stone to suffer irreparable damage and will, unless restrained, continue to cause Cold Stone to suffer damages, all of which cannot be adequately remedied at law.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT VI
## FEDERAL TRADE DRESS INFRINGEMENT

### (Against All Defendants)

64. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 63 by reference as if fully set forth herein.

11

65. Following Cold Stone's valid termination of the Franchise Agreement, Defendants have used and continue to use Cold Stone's trade dress in commerce outside the scope of the Franchise Agreement and without the consent of Cold Stone.

66. Defendants' unauthorized use of trade dress that is identical to the Cold Stone trade dress constitutes a false designation of the origin of Defendants' goods and/or services, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection or association of their store with the Cold Stone stores operated by Cold Stone licensees. Such adoption of Cold Stone's trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125.

67. Defendants have acted knowingly and with the intent to cause confusion, or to cause mistake, or to deceive.

68. Defendants conduct has directly and proximately caused Cold Stone to suffer irreparable damage and will, unless restrained, continue to cause Cold Stone to suffer damages, all of which cannot be adequately remedied at law.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT VII
## COMMON LAW TRADEMARK INFRINGEMENT

**(Against All Defendants)**

69. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 68 by reference as if fully set forth herein.

70. The conduct of Defendants, as set forth above, violates Cold Stone's trademark and trade dress rights under applicable common law.

71. Defendants' unauthorized use of Cold Stone's trademarks outside the scope of the Franchise Agreement is likely to cause confusion, mistake, or deception, and constitutes trademark infringement, in violation of the applicable common law.

72. Defendants have used and continue to use Cold Stone's trademarks outside the scope of the Franchise Agreement with full knowledge of the long and extensive prior use of the trademarks by Cold Stone and its licensees.

73. Defendants conduct has directly and proximately caused Cold Stone to suffer irreparable damage and will, unless restrained, continue to cause Cold Stone to suffer damages, all of which cannot be adequately remedied at law.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## COUNT VIII
## COMMON LAW UNFAIR COMPETITION

**(Against All Defendants)**

74. Cold Stone hereby incorporates all of the averments in Paragraphs 1 to 73 by reference as if fully set forth herein.

75. Defendants' unauthorized use of Cold Stone's trademarks outside the scope of the Franchise Agreement constitutes unfair competition under applicable common law.

76. Defendants' conduct has directly and proximately caused Cold Stone to suffer irreparable damage and will, unless restrained, continue to cause Cold Stone to suffer damages, all of which cannot be adequately remedied at law.

WHEREFORE, Cold Stone prays for judgment containing the relief requested in the prayer for relief for all counts as set forth below.

## PRAYER FOR RELIEF – ALL COUNTS

WHEREFORE, Plaintiff prays that judgment and relief on all causes of action, and as might be appropriate for each particular cause of action, against Defendants as follows:

1. For compensatory, general, special and other damages in an amount to be determined according to the proof presented during the course of trial;

2. For damages Plaintiff has sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

3. For prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

4. For Plaintiff's costs and attorneys' fees incurred in connection with this action pursuant to contract and § 35 of the Lanham Act, 15. U.S.C. § 1117;

5. For a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreement and the Sublease Agreement, and constitutes grounds for terminating the Franchise Agreement and the Sublease Agreement;

6. For a preliminary and permanent injunction directing Defendants to immediately cease from using or displaying Cold Stone's trademarks and/or trade dress at the Franchise, or at any other location.

7. For a preliminary and permanent injunction barring Defendants from engaging in any further acts of trademark infringement and unfair

competition with respect to Cold Stone's trademarks and/or trade dress described above, in violation of federal trademark and unfair competition laws and under the common law.

8. For a preliminary and permanent injunction barring Defendants from otherwise unfairly competing with Cold Stone in any manner whatsoever;

9. For a preliminary and permanent injunction barring Defendants from any other conduct which causes or is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection or association of Cold Stone's trademarks and/or trade dress;

10. For a preliminary and permanent injunction ratifying and enforcing the termination of the Franchise Agreement and the Sublease Agreement as of the effective date of the Notice of Termination, or as otherwise provided by applicable law;

11. For a preliminary and permanent injunction barring Defendants and all those acting in concert with them from infringing upon Cold Stone's trademarks and/or trade dress and from otherwise engaging in unfair competition with Cold Stone;

12. For a preliminary and permanent injunction directing Defendants to comply with their post-termination obligations under any agreement with Cold Stone, including, but not limited to, the Franchise Agreement and the Sublease Agreement;

13. For a preliminary and permanent injunction directing Defendants to vacate the premises in Wyncote, Pennsylvania where the Franchise is located; and

14. For such other relief as the Court deems necessary, just and appropriate under the circumstances.

Dated: July 31, 2008

DUANE MORRIS LLP

*(signature)*

J. Manly Parks
Atty. I.D. No. 74647
Sean S. Zabaneh
Atty. I.D. No. 201085
30 South 17th Street
Philadelphia, PA 19102
215.979.1000 (phone)
215.979.1020 (facsimile)
JMParks@duanemorris.com
SSZabaneh@duanemorris.com

*Attorneys for Plaintiff*
*Cold Stone Creamery, Inc.*

## VERIFICATION OF JOEL R. SCHWEIDEL

The undersigned, being duly sworn, hereby deposes and says:

1. That I am over the age of eighteen and I believe in the obligations of an oath;

2. That I am a Senior Vice President for Plaintiff, Cold Stone Creamery, Inc.; and

3. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and information.

_____
JOEL R. SCHWEIDEL

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned authority, by JOEL R. SCHWEIDEL, who executed the foregoing in my presence and who did take an oath this ___ day of _July_, 2008.

_____
Notary Public

My commission expires:

KAREN E. JAYCOX
Notary Public, State of New York
No. 01JA5038690
GREENE COUNTY
Commission Expires Jan 30, 2011